## STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

### v.

## Steven A. GOVE, Defendant-Appellant.

Supreme Court

*No. 87-1105-CR. Argued January 31, 1989.—Decided March 29, 1989.*

(Also reported in 437 N.W.2d 218.)

For the plaintiff-respondent-petitioner the cause was argued by *Marguerite M. Moeller*, assistant attorney general, with whom on the briefs was *Donald J. Hanaway*, attorney general.

For the defendant-appellant there was a brief and oral argument by *Glenn L. Cushing*, assistant state public defender.

WILLIAM A. BABLITCH, J.   The State of Wisconsin (State) seeks review of a court of appeals'

decision which reversed the conviction of Steven A. Gove (Gove). Gove was convicted of first-degree sexual assault of a five-year-old girl (T.S.). The court of appeals concluded that Gove's right to confrontation was violated when the trial court declared T.S. unavailable as a witness and allowed certain out-of-court statements to be introduced against Gove at trial. We conclude that Gove, by failing to object, waived any challenge to the trial court's unavailability finding. We further conclude that consideration of the issue would be contrary to the interests of justice because Gove actively contributed to what he now claims was trial court error. Accordingly, we reverse the court of appeals and remand for reinstatement of the conviction.

Gove was initially charged with first-degree sexual assault involving two children. The facts relating to his conviction for assaulting T.S. are as follows.

On April 11, 1986, T.S. was left with her babysitter, Margarette Schuman, while her mother and father went out for the evening. Gove, an acquaintance of the babysitter, also visited the residence that evening. When her mother returned at approximately 10:45 p.m., and awakened T.S., T.S. noticed Gove and began screaming hysterically. Although her mother repeatedly asked T.S. what was the matter, T.S. just continued screaming while clinging to her mother's neck. The next day, T.S. again began sobbing when her mother attempted to determine what had upset her the night before. Eventually, T.S. told her mother that Gove pulled down her pants and spanked her, "because she was a good girl." T.S. also told a detective that afternoon that Gove had slapped her on her bare butt.

On April 16, T.S. was visited by a social worker who described T.S. as scared, nervous, and withdrawn. T.S. told the social worker that Gove had touched her

"cookie," that he used his finger and his finger was "greasy," and that it hurt because he "dug around." T.S. pointed to her vaginal area when she used the term "cookie."

In a pretrial motion in limine, Gove sought to exclude testimony regarding T.S.'s out-of-court statements. The court considered the motion on the first day of trial but declined to rule in advance of the testimony. In responding to the motion, the prosecutor advised the court that "both of the children are here and I anticipate calling both of them, and I think that that issue of hearsay may be made [moot] because there will be a confrontation right."

The first witnesses called at trial were T.S.'s mother and father, who without objection related the out-of-court statements made to them by T.S. The State then called T.S. to the stand. By apparent prior agreement, the trial court conducted a voir dire of T.S., asking her a series of questions apparently designed to determine if she could satisfy the oath or affirmation requirements of sec. 906.03(1), Stats., cited below.[1] The trial court first conducted the voir dire in the jury's presence but was not satisfied that T.S. appreciated her obligation as a witness to testify truthfully. The judge then dismissed the jury and continued the voir dire, asking T.S. whether she understood the difference between the truth and a lie and if she would promise to testify truthfully.

After the second round of questioning, the trial judge asked the parties to state their respective positions regarding T.S.'s qualifications as a witness. The

---

[1] **906.03 Oath or affirmation.** (1) Before testifying, every witness shall be required to declare that he will testify truthfully, by oath or affirmation administered in a form calculated to awaken in his conscience and impress his mind with his duty to do so.

939

prosecutor insisted that T.S. understood the difference between right and wrong and should be permitted to testify. Defense counsel, on the other hand, expressed serious reservations about whether T.S. would answer questions truthfully if permitted to testify. The court then declared T.S. unavailable as a witness under sec. 908.04, Stats. The court ruled that the State had made a good faith effort to produce T.S. so as to afford Gove his confrontation rights, but remarked that "[t]his is one of those situations where without the assurances that the Court has referred to and as [defense counsel] has referred to the declarant simply is not available for testimony in the courtroom." Gove did not object to the trial court's ruling.

The State then called the social worker and detective who related the additional out-of-court statements made to them by T.S.

Gove was convicted and sentenced to an indeterminate term of not more than five years. A motion for postconviction relief based on certain prosecutorial comments made during closing arguments was denied.

On appeal Gove argued for the first time that the trial court's unavailability finding violated his sixth amendment right to confront and cross-examine his accuser. The court of appeals reversed the conviction and remanded for a new trial, concluding on the basis of its previous decision in *State v. Dwyer,* 143 Wis. 2d 448, 461, 422 N.W.2d 121 (Ct. App. 1988) (petition for review granted, oral argument held on January 31, 1989), that T.S. was available as a witness regardless of her inability to distinguish between the truth and a lie.

We conclude that Gove waived any challenge to the trial court's unavailability determination by failing to object at trial. This court has frequently stated that

even the claim of a constitutional right will be deemed waived unless timely raised in the trial court. *State v. Marshall,* 113 Wis. 2d 643, 653, 335 N.W.2d 612 (1983). Specifically, we have indicated that a defendant may waive the constitutional right to confrontation by failing to object on confrontation grounds, or may waive unavailability by failing to object with sufficient particularity to that issue. *See Id.* at 653-54, *Hagenkord v. State,* 100 Wis. 2d 452, 466-68, 302 N.W.2d 421 (1981).

Here, Gove did not object to the unavailability ruling in the trial court. The only objection to T.S.'s out-of-court statements on constitutional grounds was in Gove's pretrial motion in limine, challenging "the testimony of the victims' parents, Det. F. Nellis, and Joan Papke concerning statements made to them by the victims in this case concerning the sexual assault, and a statement made by [T.S.] to Tammy Feder and Linda Schroder." The motion was purportedly based in part on "various provisions of the Wisconsin Constitution and the United States Constitution." However, the gravamen of the motion was that none of T.S.'s out-of-court statements constituted an excited utterance. The objection neither implicated the confrontation clause nor particularized unavailability as an issue.

While Gove may not have been expected to raise the question of unavailability in his motion in limine, he certainly had this opportunity at trial. When the State called T.S. to testify, defense counsel raised no objection to the trial court questioning T.S. for the purpose of determining whether she understood the oath or affirmation requirements of sec. 906.03(1), Stats. In fact, defense counsel suggested to the court that the voir dire of T.S. be conducted in the jury's presence.

After receiving less than satisfactory responses from T.S. regarding her intention to testify truthfully, the court dismissed the jury. Following a discussion, the court announced, "I will, however, tell counsel that if I don't get a sufficient assurance that she knows the difference between right and wrong, good or bad, and if I don't get a sufficient assurance that essentially she will tell the truth, I will not permit her to testify." Again, defense counsel voiced no objection to the trial court's proposed methods.

Shortly thereafter, the trial court further questioned T.S. outside the jury's presence and requested the position of the parties regarding T.S.'s testimony. Whereas the prosecutor urged that T.S. should be permitted to testify, defense counsel expressed serious reservations about permitting T.S. to testify, and indeed exhorted the trial court to declare the child unavailable:

> I think what's relevant to this inquiry is whether or not this young girl can assure us that she is going to tell the truth with respect to everyone's questions. I thought we were going to have some trouble when we first talked about truth and lying. She didn't know when we first talked about promising and she didn't know then we talked to her about, at first, good stories and bad stories, and she didn't know, and then we talked about the right way to testify. I have to consider the totality of the circumstances and I'm not so sure that saying I know the right way to testify is exactly synonymous with telling the truth and promising the Court that she can tell the truth for everyone's benefit. ... Maybe truth and lying or truth and promise or truth and a falsehood isn't enough for her vocabulary at five years of age, but if its not and the reason its not is because she doesn't understand the concept, then

> I think the Court has to be concerned, and that's the farmer in the wheat here for lack of a better term.

The remainder of the trial record reveals an absence of objection to T.S.'s out-of-court statements on the ground that the trial court's unavailability finding denied Gove his right of confrontation. While defense counsel did object when the social worker was asked to relate what T.S. stated to her, this objection was based on hearsay grounds and was not addressed to the trial court's ruling on unavailability. Accordingly, no sufficiently specific objection on the ground of confrontation was made. *See Marshall,* 113 Wis. 2d at 653.

Finally, in addition to not objecting at trial, Gove's current counsel failed in his postconviction motion to raise the issue. Not until his brief in the court of appeals did Gove claim that the trial court had violated his right to confront and cross-examine the witnesses against him. Therefore, we conclude that Gove waived the right to challenge the trial court ruling.

Nevertheless, Gove requests this court to reach the confrontation issue because it is in the interests of justice to do so and because there are no unresolved factual issues. *See Id.* We conclude that although there are perhaps no unresolved factual issues which would preclude us from considering Gove's alleged errors, consideration of the merits is not required in the interests of justice.

We have consistently emphasized a reluctance to address unpreserved issues in the interests of justice and do so only in the "most unusual circumstances which go directly to the issue of guilt." *Maclin v. State,* 92 Wis. 2d 323, 330, 284 N.W.2d 661 (1979) (quoting

*Day v. State,* 52 Wis. 2d 122, 125, 187 N.W.2d 790 (1971)). The record in this case hardly demonstrates the exceptional circumstances warranting the court's exercise of discretion in the interest of justice. Indeed, as demonstrated by the record, Gove affirmatively contributed to what he now claims was trial court error. It is contrary to fundamental principles of justice and orderly procedure to permit a party to assume a certain position in the course of litigation which may be advantageous, and then after the court maintains that position, argue on appeal that the action was error. Given the fact that the prosecutor argued in favor of allowing T.S. to testify, the error of which Gove complains may not have occurred had Gove not encouraged the trial court's procedures.

We therefore decline to consider the merits of Gove's claim in the interests of justice.[2] Because the court of appeals erred in addressing Gove's challenge to the unavailability ruling, the decision is reversed and the case remanded with directions to reinstate the conviction.

*By the Court.* The decision of the court of appeals is reversed and remanded with directions to reinstate the conviction.

---

[2]Gove also contends that he is entitled to a new trial in the interests of justice pursuant to sec. 751.06, Stats. In order for this court to exercise its discretionary power under sec. 751.06, it must appear from the record that the real controversy has not been tried or that it is probable that justice miscarried. We are unpersuaded that Gove was denied a fair trial.