STATE of Wisconsin, Plaintiff-Respondent,

v.

Gary Lewis PETTY, Defendant-Appellant-Petitioner.

Supreme Court

*No. 93–2200–CR. Oral argument November 29, 1995.—Decided May 31, 1996.*

(Also reported in 548 N.W.2d 817.)

338

For the defendant-appellant-petitioner there was a brief and oral argument by *Ellen Henak*, assistant state public defender.

For the plaintiff-respondent the cause was argued by *Maureen McGlynn Flanagan*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

JON P. WILCOX, J. The defendant-petitioner Gary Lewis Petty (Petty) seeks review of an unpublished court of appeals decision which affirmed Petty's conviction, following a guilty plea, for possession of

341

cocaine with intent to deliver and the circuit court's order denying post-conviction relief. The court of appeals concluded that Petty was judicially estopped from asserting a claim that under Wis. Stat. § 161.45 (1991-92)[1], his state conviction was statutorily barred because it was part of the conspiracy for which he had pled guilty and was sentenced in federal court.

We are presented with two issues on this appeal. First, did the court of appeals err as a matter of law in holding that Petty was judicially estopped from challenging his state conviction? We conclude that Petty did not maintain inconsistent positions during the course of the state and federal litigation, and there is not sufficient evidence in the record to demonstrate that he attempted to "coldly manipulate" the judicial process. Although a discretionary remedy to be applied by the court, the court of appeals in this case has mistakenly expanded the breadth of the legal requirements for judicial estoppel. In doing so, we therefore conclude that the appellate court erred as a matter of law when it judicially estopped Petty's challenge to his state conviction under Wis. Stat. § 161.45.

The second issue before this court requires us to consider whether Wis. Stat. § 161.45 bars Petty's October 1991 state conviction for possession of cocaine with intent to deliver, when the defendant subsequently entered a negotiated plea to a federal charge of conspiracy with intent to distribute cocaine, and the period covered by the federal conspiracy charge includes the date of the incident on which the state charge is based. We hold that § 161.45 does not bar the state conviction in this case. The determinative moment for identifying when the statutory bar of § 161.45 applies is the point

---

[1] All future references to Wis. Stats. will be to the 1991-92 statutes unless otherwise indicated.

in the prosecution at which guilt is determined. In state court, the determination of guilt occurred in October 1991 when Petty entered a plea of guilty, prior to being indicted on conspiracy charges in federal court. The statutory bar provided under § 161.45 is therefore inapplicable to the state conviction for possession. Accordingly, we affirm the court of appeals on different grounds.

The relevant facts and procedural history are not in dispute. Petty was charged in a criminal complaint filed August 7, 1991, in Milwaukee County with one count of possession of a controlled substance (cocaine) with intent to deliver while armed, contrary to Wis. Stat. §§ 161.16(2)(b)1, 161.41(1m)(c)2 and 939.05, and one count of felon in possession of a firearm, contrary to Wis. Stat. § 941.29(2). The charges arose from an incident which occurred on August 1, 1991, at 3077 N. 25th Street in Milwaukee. An information was filed on August 15, 1991, following Petty's voluntary waiver of a preliminary hearing. On October 16, 1991, Petty entered a negotiated guilty plea to an amended complaint and information wherein the quantity of drugs involved was reduced from 25 to 100 grams to 10 to 25 grams. Sentencing on the state charges was postponed.

On December 11, 1991, Petty and several others were named in a federal indictment. We are primarily concerned on this review with only two of the nine original federal charges in which Petty was named. The first federal count charged Petty and eight others as having conspired to possess with intent to distribute in excess of five kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1), during the period from January 1, 1987, to December 1991. The sixth federal count alleged that on or about August 1, 1991, Petty had

possessed approximately one ounce of cocaine with intent to distribute.

Sentencing on the state charges was originally scheduled for January 16, 1992, but was adjourned at least six times before a sentence was imposed. The circuit court was advised that repeated delays in sentencing in federal court were attributed to Petty's cooperation as an informant and witness in ongoing drug investigations by federal authorities.

Petty received an eleven-year sentence in federal court without parole for conspiracy to possess cocaine with intent to distribute. *See United States v. Gary Lewis Petty*, No. 91-CR-283 (E.D. Wis. 1992). The additional federal charges were dismissed, including the possession charge relating to the August 1, 1991, incident. Circuit Court Judge Frank T. Crivello sentenced Petty on the state charges on November 6, 1992. He received four years on the drug possession charge, to run consecutively to the federal sentence of eleven years without parole. He was sentenced to two years in prison on the firearm possession charge[2], to run concurrently to his sentence on the state drug possession charge.

Petty originally filed a no-merit notice of appeal in May 1993. Shortly thereafter, he filed a motion in the court of appeals to allow this appeal to proceed as a meritorious appeal, to dismiss the no-merit notice of appeal, and to extend the time to file a post-conviction motion. By order of the court of appeals dated June 24, 1993, the appeal was voluntarily dismissed pursuant to Wis. Stat. § (Rule) 809.18, and Petty was given time to file a post-conviction motion and leave to file another

---

[2] Petty's conviction on the charge of felon in possession of a firearm is not at issue on this review.

appeal after the circuit court ruled on his post-conviction motion.

The post-conviction motion filed by Petty in July 1993 sought to vacate and dismiss his conviction for possession of a controlled substance while armed on the ground that his conviction was barred by Wis. Stat. § 161.45.[3] The circuit court denied the motion, holding that § 161.45 did not bar the state prosecution, because: (1) the state court prosecution preceded the federal court prosecution and (2) Petty's state conviction was for a substantive offense while the federal one was for the inchoate offense of conspiracy and therefore they did not constitute convictions for the same act.

The court of appeals affirmed the judgment of conviction and order of the circuit court. However, the court did not reach the issue of whether Wis. Stat. § 161.45 bars the state prosecution. Instead, the court held that Petty's claim was barred by judicial estoppel. The court reasoned that estoppel applied in this case because adjournments requested, at least in part by the defense, had created the potential claim of statutory double jeopardy. The court articulated its conclusion as follows:

> As we said in *State v. Gove*, 148 Wis. 2d 936, 944, 437 N.W.2d 218, 221 (1989), 'It is contrary to fundamental principles of justice . . . to permit a party to assume a certain position in the course of litigation which may be advantageous, and then after the court maintains that position, argue on appeal that the action was error.' Here, inducing the state court

---

[3] Section § 161.45 provides as follows:

Bar to prosecution. If a violation of this chapter is a violation of a federal law or the law of another state, a conviction or acquittal under federal law or the law of another state for the same act is a bar to prosecution in this state.

to adjourn sentencing in order to attain his federal court goals, Petty created his potential claim under § 161.45, STATS., - a claim which would not have existed had the state sentencing been completed before the federal sentencing. Thus, we conclude that Petty is judicially estopped from challenging his state conviction.

*State v. Petty*, No. 93-2200-CR, slip op. at 4 (Wis. Ct. App. Dec. 6, 1994).

### I. Judicial Estoppel.

Petty challenges the court of appeals' application of the doctrine of judicial estoppel in this case on the grounds that the facts as presented do not satisfy the traditional requirements of the doctrine. He contends that judicial estoppel is appropriately applied only where a party advances two irreconcilably inconsistent positions, and the inconsistency is the result of an intentional, "cold manipulation" of the judicial system. Petty argues that his positions throughout the course of both the state and federal litigation have remained consistent, and the record clearly indicates that he did not deliberately attempt to manipulate the judicial process, a fundamental prerequisite to application of the doctrine. He maintains that employing the equitable doctrine in this case will unnecessarily preclude the otherwise meritorious appeal he has raised under Wis. Stat. § 161.45.

"Because judicial estoppel is not directed to the relationship between the parties, but is intended to protect the judiciary as an institution from the perversion of judicial machinery, *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 (6th Cir. 1982), it is the prerogative of the trial court to invoke judicial estoppel at its

discretion." *State v. Fleming*, 181 Wis. 2d 546, 558, 510 N.W.2d 837 (Ct. App. 1993). In this case however, the doctrine was not applied by the circuit court, but rather, by the court of appeals. The appellate court's interpretation of the fundamental, legal requirements of the doctrine is being challenged on this review. Determining the elements and considerations involved before invoking the doctrine of judicial estoppel are questions of law which we decide independently. *Harrison v. LIRC*, 187 Wis. 2d 491, 496, 523 N.W.2d 138 (Ct. App. 1994).

The equitable doctrine of judicial estoppel, as traditionally applied in this state, is intended "to protect against a litigant playing 'fast and loose with the courts' by asserting inconsistent positions." *Fleming*, 181 Wis. 2d at 557 (quoting *Yanez v. United States*, 989 F.2d 323, 326 (9th Cir. 1993)). The doctrine precludes a party from asserting a position in a legal proceeding and then subsequently asserting an inconsistent position. *Coconate v. Schwanz*, 165 Wis. 2d 226, 231, 477 N.W.2d 74 (Ct. App. 1991). "Because the rule looks toward cold manipulation and not unthinking or confused blunder, it has never been applied where plaintiff's assertions were based on fraud, inadvertence, or mistake." *Fleming*, 181 Wis. 2d at 558 (citing *Konstantinidis v. Chen*, 626 F.2d 933, 939 (D.C. Cir. 1980)).[4]

---

[4] The rule that the doctrine of judicial estoppel will not be applied where a party took the original position as a result of mistake, inadvertence, or fraud dates to the origin of the doctrine, in *Hamilton v. Zimmerman*, 37 Tenn. (5 Sneed) 39 (1857). Originally intended to protect the sanctity of the oath, the doctrine held that a party who made a sworn statement was judicially estopped from maintaining a contrary position in a

██ The court of appeals in *Harrison* relied upon the Seventh Circuit Court of Appeals' recognition that although the doctrine is not reducible to a pat formula, certain identifiable boundaries clearly exist. They are as follows:

> First, the later position must be clearly inconsistent with the earlier position; second, the facts at issue should be the same in both cases; and finally, the party to be estopped must have convinced the first court to adopt its position—a litigant is not forever bound to a losing argument.

*Harrison*, 187 Wis. 2d at 497 (citing *Levinson v. United States*, 969 F.2d 260, 264-65 (7th Cir. 1992), *cert. denied*, 506 U.S. 989 (1992)). The central issue before the appellate court in *Harrison* was whether sworn statements made by Harrison relating to an age discrimination claim under state law were contrary to his sworn averments and testimony before a federal administrative law judge (ALJ) determining his qualifications for social security disability. Harrison had successfully argued that he was incapable of working and thus entitled to federal disability benefits. His subsequent age and handicap discrimination suit alleged that he was in fact capable of performing his job. A state ALJ ruled that the statements in the two proceed-

---

subsequent proceeding. *Id.* at 48. The court noted, however, that if the original position were taken mistakenly then "the party ought certainly to be relieved from the consequences of his error." *Id.*; *see also* Douglas W. Henkin, Comment, *Judicial Estoppel - Beating Shields into Swords and Back Again*, 139 U. PA. L. REV. 1711, 1719 (1991); Rand G. Boyers, Comment, *Precluding Inconsistent Statements: The Doctrine of Judicial Estoppel*, 80 NW. U.L. REV. 1244, 1245-46 (1986).

ings were contrary to each other and employed judicial estoppel to deny Harrison's secondary claim. The Labor and Industry Review Commission (LIRC) agreed. *Id.* at 493-94.

However, the circuit court reversed and remanded, holding that Harrison's position in his age discrimination suit was "arguably not totally inconsistent with the position taken during the social security proceedings." *Id.* at 496. The court of appeals affirmed the remand to LIRC, finding that evaluating the alleged "inconsistency" of Harrison's positions involved too many unanswered questions, as it was unclear whether federal and state legal standards governing inability to perform were identical. *Id.* at 500. In refusing to invoke the equitable doctrine, the court cautioned:

> [T]he more uncertain we are that the two judicial actions concern the same factual issues or positions, the more hesitant we should be in applying judicial estoppel. Judicial estoppel, after all, is an equitable determination and should be used only when the positions taken are *clearly* inconsistent.

*Id.* at 497-98.

In *State v. Fleming*, the defendant contended that the prosecutor had stipulated that the state would not request a jury instruction involving a lesser-included offense. However, after the defendant's motion for summary judgment, the prosecutor in fact requested that the instruction be submitted to the jury. The defendant was subsequently convicted of the lesser-included offense and appealed on the ground that the circuit court should have judicially estopped the prosecution from requesting the instruction. The court of

appeals affirmed the circuit court's refusal to employ the equitable doctrine, stating that there was no evidence that the prosecutor had attempted to "coldly manipulate" or "play fast and loose" with the judicial system. *Fleming,* 181 Wis. 2d at 558.[5]

The application of judicial estoppel in this state is consistent with the majority of the federal circuits recognizing the doctrine.[6] In *Matter of Cassidy,* 892 F.2d

---

[5] The doctrine is only applied when the positions taken by a party are truly inconsistent. In *State v. Michels,* 141 Wis. 2d 81, 414 N.W.2d 311 (Ct. App. 1987), the court of appeals invoked judicial estoppel to bar a defendant who requested a lesser-included charge of manslaughter, and then argued that the evidence was insufficient to support the conviction. *Id.* at 98. The mere appearance of inconsistency is insufficient for invocation of the doctrine. In *Coconate v. Schwanz,* 165 Wis. 2d 226, 477 N.W.2d 74 (Ct. App. 1991), the appellate court refused to apply the doctrine where a plaintiff failed to list a note as an asset in a divorce proceeding and later asserted a claim for enforceability against the maker of the note. The court held that "Coconate's current action against Schwanz cannot be characterized as a position inconsistent with one previously taken." *Id.* at 231; *see also* Boyers, *supra* note 4, at 1263-64; 18 C. WRIGHT, A. MILLER & E. COOPER, *Federal Practice and Procedure,* 4477 (1981 & Supp. 1994) (providing policy reasons for leaving reasonable room for change of position).

[6] *See, e.g., Continental Illinois Corp. v. C.I.R.,* 998 F.2d 513, 518 (7th Cir. 1993), *cert. denied,* 114 S.Ct. 685 (1994) ("[a] party can argue inconsistent positions in the alternative, but once it has sold one to the court it cannot turn around and repudiate it in order to have a second victory"); *United States v. Kepner,* 843 F.2d 755, 760 (3d Cir. 1988) ("[a] party who has gained an advantage by characterizing the law of facts involved in a case should not later be able to contradict that characterization in order to obtain a further advantage"); *Stevens Technical Services, Inc. v. SS Brooklyn,* 885 F.2d 584, 588 (9th Cir. 1989); *United States v. 49.01 Acres of Land,* 802 F.2d 387, 390 (10th

637 (7th Cir.), *cert. denied*, 498 U.S. 812 (1990), a party had successfully argued that a tax court should decide whether his tax debts were dischargeable in bankruptcy. However, upon the receipt of a disfavorable ruling by that court, he attempted to appeal the decision, claiming that it was inappropriate for the tax court to decide the question of dischargeability. The court of appeals relied upon the decision of the United States Supreme Court in *Davis v. Wakelee*, 156 U.S. 680, 689 (1895), which stated: "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position." *Cassidy*, 892 F.2d at 641.

The court estopped Cassidy from further obstructing the final resolution of his tax liability, emphasizing that the doctrine is appropriate where "intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum designed for suitors seeking justice." *Id.* However, the court also recognized the equitable limitations inherent in the application of judicial estoppel, and noted that "[i]t should not be used where it would work an injustice, such as where the former position was the product of inadvertence or mistake." *Id.* at 642 (citing *Hamilton v. Zimmerman*, 37 Tenn. (5 Snead) 39, 48 (1857)).

The State argues that judicial estoppel is appropriate in this case because Petty actively sought successive adjournments, in a conscious, deliberate effort to substantially reduce his federal sentencing

Cir. 1986); *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1166-67 (4th Cir. 1982) (cautioning that "[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle"); *Konstantinidis*, 626 F.2d at 936-38 (D.C. Cir. 1980).

exposure. And now, on appeal before this court, if he were to succeed on the merits of his claim under Wis. Stat. § 161.45, it would be solely because of the delays he caused in state court. The State claims that these two positions are directly contradictory, and are the result of an intentional manipulation of the judicial process, a clear case for invocation of the doctrine.

To the contrary, Petty asserts that the continued adjournments in state court were the result of his accommodating the requests of law enforcement, as he was utilized by the federal government as an informant in a number of drug investigations. A review of the record indicates that the State not only did not object to, but rather, acquiesced in a majority of the requested adjournments in state court. A number of times the State prosecutor joined in the various requests, and on one particular occasion, Milwaukee police officer Tom Gorecki explained to the circuit court that Petty was needed as a federal informant for continuing drug investigations, as he had already testified in one drug importation trial. On another occasion, the State failed to produce Petty in court, as he was in federal custody at the time, and so the matter was again adjourned. We find that the evidence does not support the State's contention that the adjournments were sought by the defendant so as to frustrate the court's jurisdiction in the pending state criminal proceeding.

Petty further contends that the court of appeals mistakenly relied upon this court's decision in *State v. Gove*, 148 Wis. 2d 936, 437 N.W.2d 218 (1989), to invoke judicial estoppel. The task before this court in *Gove* was whether, in the interests of justice, we should reach an issue that had been waived. *Gove*, 148 Wis. 2d at 940-41. We held that Gove had waived his constitu-

tional right to confrontation by failing to object at trial to the circuit court's unavailability determination. *Id.* at 941. Concluding that the record lacked the exceptional circumstances warranting the court's exercise of discretion in the interests of justice, we noted that "Gove affirmatively contributed to what he now claims was trial court error." *Id.* at 944. Although the court of appeals attempts to liken the present case to that in *Gove*, the decision to utilize a discretionary doctrine to reach an otherwise waived claim is substantially dissimilar from the issue presently before this court.[7]

■

The utilization of judicial estoppel in this state, although discretionary in nature, is guided by well established legal principles. Two fundamental requirements to application of the doctrine are absent here. The record does not support the State's contention that Petty asserted irreconcilably inconsistent positions. Petty has consistently sought to minimize the length of his prison stay, whether it be receiving a concurrent sentence, or dismissal of the state charge on grounds of statutory double jeopardy.

Similarly, the State's claim that Petty has intentionally manipulated the judicial system is unfounded.

---

[7] *But see State v. Harp*, 161 Wis. 2d 773, 469 N.W.2d 210 (Ct. App. 1991), in which the appellate court exercised discretionary powers under the interests of justice doctrine to reach a claim that a defendant's conviction should be reversed because of a constitutionally defective jury instruction even though the defendant "affirmatively contributed" to the error. *Id.* at 782. The court held that use of the doctrine was reasonable because the defendant did not request the instruction for tactical reasons, the law was in flux at the time, and the defendant was "no more responsible for the error than was the state or the trial court." *Id.* at 783.

The procedural history of this case reveals that Petty's appellate counsel was unaware of the import of Wis. Stat. § 161.45 at the initial stage of appeal. In fact, Petty originally intended to file a no-merit report. It was only in preparing this document that the issue of the applicability of § 161.45 arose, allowing the case to proceed with the subsequent filing of a meritorious post-conviction motion.

The manipulative perversion of the judicial process, which the doctrine of judicial estoppel is designed to combat, is not present in this case. Equity does not require estopping Petty from asserting a claim under Wis. Stat. § 161.45, where there is no suggestion that he intended to play "fast and loose with the judicial system," nor did he maintain inconsistent positions during the course of the litigation. The doctrine looks toward cold manipulation, not an unthinking or confused blunder. Absent an attack on judicial integrity, the inapplicability of the doctrine is justified by the more compelling interest of allowing a party to correct an innocent mistake, in light of the high stakes involved in a criminal proceeding. We find that the court of appeals has mistakenly expanded the breadth of the legal elements required to invoke the doctrine of judicial estoppel by applying it to the facts of the present case. Therefore, we conclude that the appellate court erred as a matter of law.

## II. Prosecution Bar.

The final issue that we address on this review is whether Petty's conviction in state court must be vacated because it violates Wis. Stat. § 161.45. The interpretation of a statute is a question of law which

this court reviews de novo, without deference to the lower courts. *State v. Wittrock*, 119 Wis. 2d 664, 669, 350 N.W.2d 647 (1984). In construing a statute, this court must ascertain and give effect to the intent of the legislature. *Benjamin Plumbing, Inc. v. Barnes*, 162 Wis. 2d 837, 856, 470 N.W.2d 888 (1991). "We must give words their ordinary and accepted meanings and try to give effect to every word so as to not render any part of the statute superfluous." *Id.* (citing *State v. Sher*, 149 Wis. 2d 1, 9, 437 N.W.2d 878 (1989)).

The focus of our statutory inquiry is that language found in Wis. Stat. § 161.45, which provides as follows:

> Bar to prosecution. If a violation of this chapter is a violation of a federal law or the law of another state, a conviction or acquittal under federal law or the law of another state for the same act is a bar to prosecution in this state.

The parties are in agreement that a plain reading of the statute requires that: (1) the prosecution in state court must occur *after* a federal conviction,[8] and (2) the federal conviction must be for the "same act," in order for the statutory bar to prosecution to apply.

Our analysis of this appeal must begin with a determination of the role that the term "prosecution"

---

[8] Although the statute does not specify "former" and "subsequent" to identify the mechanism for triggering the statutory bar, the State asserts that the only logical reading of the statute as a whole is to assume that the Wisconsin prosecution must follow the out-of-state (i.e., federal or other state) conviction or acquittal. We agree. Petty argues that interpretation of the statute requires some form of alternative analysis, but neglects to define what it would be. Despite this, he concedes that application of the statutory bar requires that the prosecution in state court come *after* the federal prosecution.

plays within the framework of Wis. Stat. § 161.45, such that it will act to bar additional criminal proceedings against a particular individual. Petty contends that his state prosecution for cocaine possession occurred after he was convicted in federal court on the conspiracy charge. The analytical basis for this conclusion relies upon the fact that Petty defines prosecution under § 161.45 as a process that is not completed until sentence has been imposed and judgment is entered. *See Bradley v. United States*, 410 U.S. 605, 609 (1973) (citing *Korematsu v. United States*, 319 U.S. 432 (1943); *United States v. Murray*, 275 U.S. 347 (1928)). Therefore, Petty reasons that his state conviction is barred under the statute simply because the state prosecution was not technically completed until state sentences were imposed in November 1992, following completion of the prosecution in federal court.

However, this simplified approach to interpreting Wis. Stat. § 161.45 begs the question of what aspect of prosecution it is that we are dealing with under the statute. "The term 'prosecution' clearly imports a beginning and an end," *see Bradley*, 410 U.S. at 609, and consists of a myriad of activity that generically can be classified into three categorical stages: (1) initiation, (2) conviction or acquittal, and (3) sentencing. The statute at issue does not clearly articulate the stage that a prosecution must reach in order to operate as a bar to further criminal proceedings under the laws of this state. Petty contends that the imposition of a sentence is the determinative point, while the State suggests that the conviction or acquittal stage is more appropriate.

In accord with the canons of statutory construction, we are to give words their ordinary and accepted meanings so as not to render any part of the statute

superfluous. *Sher*, 149 Wis. 2d at 9. Defining the role of the term "prosecution," as utilized under Wis. Stat. § 161.45, is the focal point for our analysis of Petty's present claim. The United States Supreme Court acknowledged the common usage of the term "prosecution" in its decision in *Bradley*, where it remarked that "[w]hen people speak of prosecutions, they usually mean a proceeding that is under way in which guilt is to be determined. In ordinary usage, sentencing is not part of the prosecution, but occurs after the prosecution has concluded." *Id.* at 608. Moreover, a "prosecution" has been defined as "a proceeding instituted and carried on by due course of law, before a competent tribunal, for the purpose of determining the guilt or innocence of a person charged with crime." *Black's Law Dictionary* at 1221 (6th ed. 1990).

We similarly employ the ordinary meaning of the term "prosecution" in our limited interpretation of Wis. Stat. § 161.45, and hold that a prosecution is to be equated with conviction or acquittal. The sentencing phase is therefore not the determinative point for analysis under the statute, as Petty has argued. This result is implicit from a reading of the statute, which refers to "a *conviction or acquittal* under federal law or the law of another state for the same act [as] a bar to prosecution in this state." § 161.45 (Emphasis added.)

Our interpretation of the statute is supported by the legislative history of Wis. Stat. § 161.45 as well, which, as the State notes, is undeniably sparse.[9] How-

[9] Wis. Stat. § 161.45 was created in 1971 as a provision of the Uniform Controlled Substances Act, *see* 1971 Wis. Laws 219, § 16 at 629. Section 161.45 was adopted without any revision from the Uniform Act. *See generally* Uniform Controlled Substances Act, 9 (Part II) U.L.A. 1 (1988). The Act was

ever, the language of the statutory bar to prosecution within the Controlled Substances Act clearly indicates the legislature's intent to abolish the dual sovereignty doctrine by statute, with regard to substantially identical drug offenses based on the same act. The United States Supreme Court and courts of numerous states have held that a state prosecution following a federal prosecution does not constitute a violation of the defendant's constitutional protection against being placed in double jeopardy. In *Abbate v. United States*, 359 U.S. 187 (1959), the United States Supreme Court discussed the doctrine of dual sovereignty, observing:

> We have here two sovereignties, deriving power from different sources, capable of dealing with the same subject-matter within the same territory . . . . Each government in determining what shall be an offense against its peace and dignity is exercising its own sovereignty, not that of the other.
>
> It follows that an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each. The Fifth Amendment, like all the other guaranties in the first eight amendments, applies only to proceedings by the Federal Government, . . . and the double jeopardy therein forbidden is a second prosecution under authority of the Federal Government after a first trial for the same offense under the same authority.

*Id.* at 194 (citing *United States v. Lanza*, 260 U.S. 377, 382 (1922)). Despite this directive, a number of states, focusing upon the individual's interest in being free from repeated prosecutions for the same alleged acts,

---

designed to supplant the Uniform Narcotic Drug Act, in effect in many jurisdictions, including Wisconsin, since the 1930's. *See* 9 (Part II) U.L.A. at 2.

have enacted legislation aimed at alleviating continued prosecution, depending upon the similarity of the state and federal charges and upon whether the state and federal laws were designed to protect the same governmental interests. *See generally* Annotation, *Conviction Or Acquittal In Federal Court As Bar To Prosecution In State Court For State Offense Based On Same Facts—Modern View*, 6 A.L.R.4th 802, 816-24 (1981). Section 161.45 is representative of the type of legislation instituted by those jurisdictions precluding continuing prosecution, as permitted under the doctrine of dual sovereignty.

We now proceed to analysis of the facts of this case, in light of the foregoing, to determine if Wis. Stat. § 161.45 will act to bar Petty's conviction in state court. Petty contends that his state prosecution for cocaine possession occurred after he was convicted in federal court on the conspiracy charge. Petty reasons that because his federal sentence was imposed in October 1992, prior to the imposition of sentence in state court in November 1992, § 161.45 should bar the state conviction, as the state prosecution came after the federal prosecution. However, this argument runs contrary to our conclusion today that prosecution is to be equated with conviction or acquittal under § 161.45. The particular date on which a sentence is imposed is not the relevant inquiry under our analysis of the statute.

For purposes of assessing the applicability of Wis. Stat. § 161.45, we must determine the point at which guilt was determined on the state and federal charges. In state court, the determination of guilt occurred in October 1991, when Petty entered a plea of guilty before Judge Crivello. At that time, the federal prosecution had not begun, as Petty was not even indicted on

federal charges until December 1991. Therefore, we conclude that because the federal prosecution against Petty occurred after he was convicted in state court, the bar to a state prosecution contained in § 161.45, is not applicable to Petty's state drug conviction in this case.[10]

The result which we have reached, based upon our interpretation of the language of the statute, is bolstered by the argument advanced by the State in both its brief and during oral argument. The State asserts that the statutory provision at issue creates a form of statutory double jeopardy, protecting individuals from multiple prosecutions by separate sovereign entities for the same act even though the constitution does not.[11] The United States and Wisconsin constitutions protect a criminal defendant from being twice placed in jeopardy for the same offense.[12]

The proper point at which to begin this analysis is to determine the precise moment at which jeopardy

---

[10] Because we conclude that the conviction in state court preceded the federal prosecution, we need not reach the issue of whether the two prosecutions were for the "same act."

[11] *See Heath v. Alabama*, 474 U.S. 82 (1985) (concluding that successive prosecutions by two states for the same conduct was not barred by double jeopardy); *Bartkus v. Illinois*, 359 U.S. 121, 132 (1959) (repeating the rule that successive state and federal prosecutions are not in violation of the Fifth Amendment); *United States v. Gaertner*, 583 F.2d 308, 312 (7th Cir. 1978), *cert. denied*, 440 U.S. 918 (1979) (same).

[12] The Fifth Amendment to the United States Constitution provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." Article I, § 8 of the Wisconsin Constitution states: "[N]o person for the same offense may be put twice in jeopardy of punishment."

attached to the state proceeding.[13] We recognized in *State v. Comstock*, 168 Wis. 2d 915, 485 N.W.2d 354 (1992), that "[t]he prohibition against double jeopardy is not triggered until 'jeopardy attaches' in the proceedings. Jeopardy means exposure to the risk of a determination of guilt or innocence." *Id.* at 937 (quot-

---

[13] Petty argues that traditional double jeopardy analysis does not apply when interpreting Wis. Stat. § 161.45, contending that the statute requires a significantly broader analysis than the well-established test of whether the offenses are identical in law and fact. *See Blockburger v. United States*, 284 U.S. 299, 304 (1932); *State v. Poveda*, 166 Wis. 2d 19, 22, 479 N.W.2d 175 (Ct. App. 1991). However, the defendant offers no authority for this proposition, which seemingly contradicts the language of the statute. As the State recognizes, there is no support in the legislative history to substantiate a claim that either the drafters of the Uniform Acts or the successive Wisconsin legislatures intended to deviate from prevailing double jeopardy law concerning what constitutes the same offense for purposes of the statutory bar to prosecution.

Rather, the statutory language tracks the *Blockburger* test as it expressly requires an identity of law (between the violation of "this chapter" and the federal law or that of another state) as well as an identity of fact (the "same act"). Moreover, the fact that a primary purpose of the Controlled Substances and Narcotics Act is to achieve uniformity, while providing an interlocking trellis of drug laws among the state and federal jurisdictions, strongly supports the State's assertion that § 161.45 bars a subsequent state prosecution only when the offenses are substantially the same in fact and law. *See generally* Prefatory Note, *1970 Handbook of the National Conference of Commissioners on Uniform State Laws*, at 223. The defendant has failed to provide any authority to bolster his alternative reading of § 161.45, relying instead on an unsupported assertion that the legislature simply intended to broaden double jeopardy analysis in this state without explanation. We do not agree with this novel reading of the statute in question.

ing 3 W. LaFave and J. Israel, *Criminal Procedure*, § 24.1(c) at 63 (1984)). "Where there is no trial, jeopardy attaches upon the court's acceptance of a guilty or no contest plea." *State v. Poveda*, 166 Wis. 2d 19, 25, 479 N.W.2d 175 (Ct. App. 1991); *see also Comstock*, 168 Wis. 2d at 937-38; *State v. Waldman*, 57 Wis. 2d 234, 237, 203 N.W.2d 691 (1973); *Salters*, 52 Wis. 2d at 714; *Hawkins v. State*, 30 Wis. 2d 264, 267, 140 N.W.2d 226 (1966); and *Belter v. State*, 178 Wis. 57, 62, 189 N.W. 270 (1922).[14]

As indicated earlier, Petty's guilty plea on the state charges was accepted by Judge Crivello in October 1991, and a judgment of conviction was entered. It was at this point that jeopardy attached to the state proceedings. Despite the significance of this juncture, Petty's argument remains consistent, asserting that the state conviction is barred by Wis. Stat. § 161.45 because the state prosecution was not technically completed until state sentences were imposed in November 1992. However, we have previously demonstrated this reasoning to be flawed in light of our reading of § 161.45. Moreover, the appellate court in *Poveda* clari-

[14] Consistent with the precedent of this court, a number of federal circuit courts of appeal have similarly concluded that jeopardy attaches upon the acceptance of a guilty plea. *See United States v. Britt*, 917 F.2d 353, 356 n.3 (8th Cir. 1990), *cert. denied*, 498 U.S. 1090 (1991); *United States v. Baggett*, 901 F.2d 1546, 1548 (11th Cir.), *cert. denied*, 498 U.S. 862 (1990); *United States v. Kim*, 884 F.2d 189, 191 (5th Cir. 1989); *but see United States v. Santiago Soto*, 825 F.2d 616 (1st Cir. 1987), *cert. denied*, 493 U.S. 831 (1989); *Gilmore v. Zimmerman*, 793 F.2d 564 (3d Cir.), *cert. denied*, 479 U.S. 962 (1986); *United States v. Combs*, 634 F.2d 1295 (10th Cir. 1980), *cert. denied*, 451 U.S. 913 (1981).

fied that the particular timing or date of completion of a prosecution is not the critical factor in the court's analysis. Rather, "the determinative moment is that at which jeopardy attaches, for that is, after all, 'the lynchpin for all double jeopardy jurisprudence.' " *Id.* at 25 (quoting *Crist v. Bretz*, 437 U.S. 28, 38 (1978)).

The State asks this court to consider the result reached by the Pennsylvania court in *Commonwealth v. Ramirez*, 533 A.2d 116 (Pa. Super. 1987), a case factually similar to the one at hand. In *Ramirez*, the defendants were initially charged with possession and delivery of a controlled substance in state court. The defendants pled guilty to the state charges after being indicted in federal court on related charges. *Id.* at 117-18. Prior to being sentenced in state court, they pled guilty to the federal drug conspiracy charges and were sentenced. When state sentences were imposed, the defendants sought to withdraw their state pleas on grounds that the state charges were prohibited by a statutory double jeopardy bar similar to Wis. Stat. § 161.45.[15]

The Pennsylvania court, consistent with the result reached in *Poveda*, held that application of the jeopardy bar was not dependent upon the sequence of the

---

[15] Though similar to the statutory language before us, the Pennsylvania statute has incorporated specific reference to "former" and "subsequent" prosecutions. 18 Pa.C.S.A. § 111 (1995) provides as follows:

§ 111. When prosecution barred by *former* prosecution in another jurisdiction:

When conduct constitutes an offense within the concurrent jurisdiction of this Commonwealth and of the United States or another state, a prosecution in any such other jurisdiction is a bar to a *subsequent* prosecution in this Commonwealth under the following circumstances:

. . . (Emphasis added.)

filing of the particular charges. Rather, the court articulated that the determinative factor triggering the application of the statutory bar was the point at which the guilty pleas were entered, stating: "[a] prosecution against a defendant, consequently, is not completed, and therefore cannot be a 'former prosecution,' until a defendant is acquitted or convicted." *Ramirez*, 533 A.2d at 119. The court therefore concluded that the statutory jeopardy bar was not applicable because the Pennsylvania prosecution had been completed first. *Id.*

In the present case, the State's prosecution of Petty was completed on October 16, 1991, when the circuit court accepted his pleas of guilty, and jeopardy attached to the proceedings. *See Comstock*, 168 Wis. 2d at 937-38; *Poveda*, 166 Wis. 2d at 25. As this date was prior to the prosecution of Petty in federal court, we conclude that Wis. Stat. § 161.45 cannot serve to relieve Petty from his drug conviction in state court. We therefore affirm the decision of the court of appeals on different grounds.

*By the Court.*—The decision of the court of appeals is affirmed.