COURT OF APPEALS
DECISION
DATED AND FILED

June 10, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1408**

Cir. Ct. No. **2011CF1134**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JIVONTE M. JONES,

DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Milwaukee County: MARK A. SANDERS, Judge. *Affirmed.*

Before White, C.J., Donald, P.J., and Colón, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Jivonte M. Jones, pro se, appeals from an order of the circuit court denying, without a hearing, a postconviction motion for a new trial based on newly discovered evidence.   For the reasons set forth below, we affirm.

## BACKGROUND

¶2     The State charged Jones on March 11, 2023, with one count of first-degree intentional homicide with use of a dangerous weapon and one count of armed robbery, both as party to a crime.   The charges arose from the death of Oscar on March 7, 2011, from a gunshot wound to the head.   As alleged in the criminal complaint, Oscar and Ivan,[1] met Jones and another man at a duplex on West Galena Street to look at a TV Jones said he was selling.   Oscar and Ivan followed Jones and the other man into the house.   Once inside, Jones pulled out a gun and demanded money from Oscar and Ivan.   When Oscar and Ivan denied having the money with them, Jones ordered Oscar and Ivan to remove their clothes.   Jones then left to see if Oscar and Ivan had the money in their truck.   Oscar's girlfriend, Gina, was waiting in their truck outside, and Oscar and Ivan followed Jones out to the truck.   Jones fired multiple gunshots back at the house.   Ivan found Oscar lying near the entrance of the house.   Oscar had been hit twice, once in the arm and once in the forehead.

¶3     The case proceeded to a jury trial, where Ivan, Gina, and several others, including Jones's accomplice, some neighbors, and the investigating

---

[1] We adopt the pseudonyms used by the State to refer to the witnesses.  *See* WIS. STAT. RULE 809.19(1)(g) (2023-24).   All references to the Wisconsin Statutes are to the 2023-24 version.

police, testified consistent to the allegations in the criminal complaint. Jones was convicted of armed robbery and first-degree reckless homicide, as a party to a crime, and Jones was subsequently sentenced to 50 years of imprisonment, bifurcated as 35 years of initial confinement and 15 years of extended supervision. Jones's conviction was affirmed on appeal pursuant to the no-merit process. *State v. Jones*, No. 2013AP243-CRNM, unpublished op. and order (WI App Aug. 22, 2014).

¶4     In 2022, Jones, proceeding pro se, filed the postconviction motion underlying this appeal in which Jones raised a claim of newly discovered evidence based on two affidavits, one from Todd Stier and one from Tristzette Edwards, in which the affiants both averred that they saw a skinny, bald-headed man fire a gun at the house from the street. The circuit court denied Jones's motion, without a hearing. In its decision, the circuit court found that Jones had not demonstrated a reasonable probability of a different result because the contents of the two affidavits were "hardly exculpatory" and "insufficient to credibly challenge the weight of the trial testimony" and "overwhelming" evidence of Jones's guilt. Jones appeals.

## DISCUSSION

¶5     A defendant is not automatically entitled to an evidentiary hearing following a postconviction motion. "A hearing on a postconviction motion is required only when the movant states sufficient material facts that, if true, would entitle the defendant to relief." *State v. Allen*, 2004 WI 106, ¶14, 274 Wis. 2d 568, 682 N.W.2d 433. "[I]f the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief," a circuit

court may deny a postconviction motion without a hearing. *Id.*, ¶9. We review a circuit court's decision to deny a hearing when a motion does not raise facts sufficient to entitle the movant to relief, presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief for an erroneous exercise of discretion. *State v. Ruffin*, 2022 WI 34, ¶28, 401 Wis. 2d 619, 974 N.W.2d 432.

¶6 In this case, Jones argues that he is entitled to a hearing on his motion for a new trial, alleging that he has newly discovered evidence in the form of two affidavits describing the shooter. The decision to grant a motion for a new trial based on newly discovered evidence is committed to the circuit court's discretion. *State v. Avery*, 2013 WI 13, ¶22, 345 Wis. 2d 407, 826 N.W.2d 60. To be entitled to a new trial based on newly discovered evidence, "a defendant must prove: '(1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking the evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative.'" *State v. Plude*, 2008 WI 58, ¶32, 310 Wis. 2d 28, 750 N.W.2d 42 (citation omitted). "If the defendant is able to prove all four of these criteria, then it must be determined whether a reasonable probability exists that had the jury heard the newly[]discovered evidence, it would have had a reasonable doubt as to the defendant's guilt." *Id.*

¶7 "A reasonable probability of a different result exists if there is a reasonable probability that a jury, looking at both the old and the new evidence, would have a reasonable doubt as to the defendant's guilt." *Avery*, 345 Wis. 2d 407, ¶25. "A court reviewing the newly discovered evidence should consider whether a jury would find that the evidence 'had a sufficient impact on other evidence presented at trial that a jury would have a reasonable doubt as to the

4

defendant's guilt.'" *Id.* (citation omitted). "This latter determination is a question of law." *Plude*, 310 Wis. 2d 28, ¶33.

¶8    As an initial matter, the State argues that we should reject Jones's claim based on newly discovered evidence because of the doctrine of judicial estoppel. *See State v. Petty*, 201 Wis. 2d 337, 346-54, 548 N.W.2d 817 (1996) (describing and applying the doctrine of judicial estoppel). The State argues that Jones took responsibility for his crime and apologized to Oscar's family at the time of sentencing and, because the circuit court relied on Jones's apparent remorse in imposing sentence, we should not allow Jones to now raise an argument for his innocence based on alleged newly discovered evidence.

¶9    We disagree that a defendant may be precluded from taking a new position in light of alleged newly discovered evidence. *See id.* at 346-47 (describing judicial estoppel as a discretionary doctrine). Instead, we reach the merits of Jones's newly discovered evidence claim and conclude that Jones is not entitled to a hearing on his motion because he has failed to establish that there is a reasonable probability of a different result.

¶10    Similar to the circuit court, we also restate the evidence as described in our prior decision addressing Jones's no-merit appeal:

> At trial, [Ivan] testified that he went with … Oscar [] and Oscar's girlfriend, [Gina], to purchase a television from Jones. He and Oscar left the money for the purchase in their truck with [Gina] and went with Jones and another man into a house. They went up to the second floor, where Jones pulled out a gun and told them to hand over the money for the television. [Ivan] testified that they told Jones they did not have the money with them. Jones and his accomplice took their cell phones and their wallets at gunpoint. [Ivan] testified that Jones began hitting Oscar in the face with the gun, and told them to take off their clothing, leaving them wearing nothing but their boxers.

[Ivan] testified that Jones then took the car keys from Oscar and told his accomplice to go down to the truck to see if they left the money with [Gina]. After a few minutes passed, Jones decided to go check what was happening at the truck, so he gathered up their clothes and went down the steps. [Ivan] testified that he told Oscar that they should leave. As they were getting their shoes on, which Jones had left behind, the truck alarm sounded. They started down the stairs, fearing for [Gina]'s safety. Jones heard them coming and warned them to stay upstairs or he would shoot them. Worried about [Gina], Oscar continued down the stairs. [Ivan] testified that he heard two shots. When he reached the bottom of the steps, he saw Oscar lying on the floor bleeding near the door and saw Jones walking away with the gun in his hand. [Ivan] testified that he dragged Oscar from the front door out into the snow. [Ivan] testified that Jones turned around and shot at them three or four more times after he reached the sidewalk.

[Gina] testified that on the day of the murder, she waited in the truck while Oscar and [Ivan] went with Jones and another man into the house. After about five minutes, she saw the man who had been with Jones come outside and walk across the street. She testified that she then saw Jones come out of the house. He stood near the door and told her that Oscar needed her to come inside. As she got out of the truck, the alarm began to sound. She started walking toward the house with the alarm sounding but, before she got to the door, Jones ran out into the yard, shooting his gun toward the house. Then she saw Oscar lying on the ground injured, with [Ivan] trying to pick him up.

[Leonard] testified that he was fixing his van around the corner from his house on the day of the murder. Jones and his cousin approached him and Jones asked if he could use [Leonard's] house to "bag up some weed." [Leonard] testified that he told him "no." Jones walked away in the direction of [Leonard's] house. After chatting for a few minutes, Jones's cousin walked in the direction that Jones had gone. About fifteen to twenty minutes later, [Leonard] heard gunshots coming from around the corner in the direction of his house. He quickly put the wheel back on his van and drove there. On the way, he saw Jones running with a gun. He saw Jones jump into a car, which drove quickly away. [Leonard] testified that when he got back to his house, he saw a wounded man lying in the yard and saw that the front and back doors to his house were open.

Detective Dennis Devalkenaere testified that [Leonard] identified Jones in a photo lineup. Devalkenaere also testified that [Leonard] told the police he knew Jones from the neighborhood and he was the person who initially identified Jones for the police after the shooting.

Devontae Thames testified that he was with Teuntae Allen and Jones on the day of the murder. They met up with [Ivan] and Oscar [] and drove to a house where Jones said he was going to sell them a television. Jones and Allen got out of the car and told him to wait. Thames testified that about seven minutes later he heard gunshots. Allen ran up to the car and hopped in, saying "stupid [n*****]." Thames asked him why he was saying that and Thames said, referring to Jones, "he shot them." Thames testified that Jones then ran to the car and they drove from the scene. Thames testified that he got out of the car a few minutes later and walked away, telling Jones and Allen that he did not want to have anything to do with what had happened.

[Aaron] testified that he worked at Payless Market, where he sold phones and tobacco. He testified that Jones came to the store at around 3:30 p.m. on the day of the murder, which was about twenty minutes after the shooting, and sold him a cell phone for $30. [Aaron] testified that he turned the cell phone over to the police and gave them a videotape of the transaction. The cell phone belonged to Oscar[.]

[Steve], a neighbor, testified that he was getting ready for work when he heard gunshots. He looked out his window and saw a man standing in the middle of the street shooting toward the house across the street. [Steve] said he watched the scene unfold for a full minute, and that he saw a man, Oscar[,] lying in the yard wounded.

*Jones*, No. 2013AP243-CRNM, at 3-5.

¶11 In light of the evidence of Jones's guilt, which we have previously recognized as overwhelming, we conclude that there is no reasonable probability of a different result. The affidavits Jones presents as newly discovered evidence identify a skinny, bald-headed man firing shots at a house. There is no mention of who this man is, and there is no indication that Jones was innocent and somehow

7

not a shooter. Moreover, even assuming Jones was not a shooter, nothing in the affidavits negates Jones's overall involvement in the events that led to Oscar's death. Several witnesses testified at trial to Jones's involvement in the events that led to Oscar's death, and given that Jones was charged as a party to a crime, Jones's involvement in the overall events that led to Oscar's death is sufficient. *See* WIS. STAT. § 939.05 (allowing a person to be charged as a principal if a person "intentionally aids and abets the commission of [the crime]"). Thus, there is no reasonable probability of a different result in light of the overwhelming evidence of Jones's involvement in Oscar's death.

¶12 Accordingly, the record conclusively demonstrates that Jones is not entitled to relief, and therefore, we affirm the circuit court's denial of Jones's postconviction motion without a hearing.[2]

> *By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[2] Jones additionally raised an argument on appeal for a new trial in the interest of justice pursuant to WIS. STAT. § 752.35. We do not address his argument as it was raised in the context of a postconviction motion under WIS. STAT. § 974.06. *See State v. (Gilbert) Allen*, 159 Wis. 2d 53, 55-56, 464 N.W.2d 426 (Ct. App. 1990). Moreover, we further observe that a new trial in the interest of justice is reserved for exceptional cases, and this is not such a case. *See State v. Avery*, 2013 WI 13, ¶38, 345 Wis. 2d 407, 826 N.W.2d 60.