COURT OF APPEALS
DECISION
DATED AND FILED

February 17, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2022AP230**

STATE OF WISCONSIN

Cir. Ct. No.  2016ME157

IN COURT OF APPEALS
DISTRICT III

IN THE MATTER OF THE MENTAL COMMITMENT OF C. J. A.:

OUTAGAMIE COUNTY,

PETITIONER-RESPONDENT,

V.

C. J. A.,

RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Outagamie County: TIMOTHY A. HINKFUSS, Judge. *Affirmed*.

¶1    HRUZ, J.[1]   Catherine[2] appeals two orders entered under WIS. STAT. ch. 51: one recommitting her for twelve months, and another requiring the

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

involuntary administration of medication and treatment. Catherine argues that the circuit court lacked competency to hold a recommitment hearing due to Outagamie County's failure to abide by statutory timelines. Catherine further argues that the court committed plain error by admitting hearsay evidence derived from Catherine's treatment record.

¶2     Regarding the first issue, we agree that the circuit court lost competency by postponing the final hearing for more than seven days past the date of the originally scheduled final hearing, thereby violating WIS. STAT. § 51.20(10)(e). We conclude, however, that Catherine is judicially estopped from advancing this argument on appeal, given the specific circumstances surrounding the postponement. As to the second issue, Catherine failed to object to the admission of the hearsay evidence at the circuit court level—thus her need to argue plain error—and we are not convinced that what she alleges constitutes plain error. We therefore decline to apply the plain error doctrine on this matter. Accordingly, we affirm the court's orders.

## BACKGROUND

¶3     Catherine started receiving mental health services from the County in April 2012 as a condition of her probation. In early September 2016, Catherine was placed on a seventy-two-hour mental health hold under WIS. STAT. § 51.15, due to homicidal threats she was making toward a judge. Later that month, after a hearing, Catherine was committed under WIS. STAT. § 51.20 for a period of six months. Since then, Catherine has been consecutively recommitted four times for

---

[2] For ease of reading, we refer to the appellant in this confidential appeal using a pseudonym, rather than her initials.

a period of twelve months each. Catherine has contested most of her recommitments.

¶4 In July 2021, the County timely filed another petition to recommit Catherine, which is the recommitment at issue in this appeal. The prior recommitment order was due to expire on August 18, 2021, and a recommitment hearing was originally scheduled for August 13, 2021. Three days prior to the scheduled hearing, Catherine requested an independent psychological evaluation by Dr. James Black. In doing so, she agreed "to waive all applicable time limits for holding the hearing to allow for an evaluation" and asked "that the hearing be set out by 30-45 days to allow for completion of the evaluation."

¶5 On August 13, 2021, Catherine and counsel for the County signed a "stipulation for temporary extension of commitment." The stipulation stated that "the parties have agreed to continue [Catherine's] mental health commitment for a period of 60 days … to allow for completion of the independent evaluation with respect to the extension of commitment." The circuit court held a status conference that same day, wherein it accepted the stipulation and extended the time limit of the existing commitment by sixty days. The court then ordered an independent evaluation by Dr. Black. The newly extended recommitment order was set to expire on October 17, 2021.

¶6 The circuit court subsequently held a recommitment hearing on October 14, 2021, fifty-seven days after the original recommitment order was set to expire. At the hearing, the County called two witnesses: Katie Chaganos and Dr. Marshall Bales. Catherine also testified, and she called Dr. Black as a witness. All of the witnesses agreed that Catherine suffers from a treatable mental illness; the only issue was her dangerousness. No party objected at the hearing to the

court's competency to proceed. At no point did Catherine object to the introduction of any inadmissible hearsay.

¶7 Katie Chaganos, a licensed clinical therapist and social worker who had been treating Catherine monthly since March 2020, testified first. Chaganos testified that Catherine has been relatively compliant with her treatment conditions and "for the most part … compliant with attending meetings, seeing her doctor and taking her medications." According to Chaganos, in 2017, Catherine switched from an oral to an injectable form of the same medication. Chaganos testified that Catherine lacks "insight and awareness into her mental illness and [her] need for psychotropic medication" and that Catherine denies having been delusional or having hallucinations in the past. Chaganos also testified that during her monthly meetings with Catherine, Catherine reported that "she does not find any benefit to the medication" and often talked "about the negative side effects of the medication." Chaganos concurred that there are "a lot of negative side effects to the medication." During cross-examination, Chaganos testified that Catherine had not been hospitalized during the past year. Chaganos further testified that Catherine was employed.

¶8 The County then called Dr. Bales, Catherine's treating physician, as a witness. Bales testified that he had worked with Catherine for "a couple years" as a psychiatrist for the County. Bales diagnosed Catherine with schizoaffective disorder. The symptoms of Catherine's disorder, Bales explained, are that she experiences mood instability and paranoia and that she becomes very antagonistic. Bales also testified that Catherine "will become very angry when in a manic or psychotic state." Bales testified that recently Catherine had "not been dangerous, not had crisis reports, not had police contact, [and] not had [any] hospitalizations." Despite those facts, Bales testified that when treatment had been withdrawn from

Catherine in the past, her mental health issues have increased. Bales also testified that, in the past, Catherine made threats that have "put her family in fear." Bales opined that if Catherine's treatment were withdrawn, her mental condition would deteriorate and she would become dangerous over time.

¶9 Catherine called Dr. Black, a licensed psychologist, to testify, and his independent evaluation of Catherine was admitted as evidence at the hearing. Black opined that Catherine met the criteria for having schizoaffective disorder. Despite this diagnosis, Black did not recommend that Catherine be recommitted. In Black's opinion, Catherine did not present a substantial risk of dangerousness, but he did recognize that Catherine "might present a mild risk based on her history." Black also noted that Catherine had been "remarkably compliant and remarkably uninvolved with police or hospitals."

¶10 Catherine testified that she had no objections to taking medication or continuing treatment. When asked if she would voluntarily seek treatment and medication, Catherine testified that she would continue to seek medical help but would "probably seek out a different doctor." Catherine also repeatedly testified that she never threatened the judge who was the subject of her prior criminal case. Catherine further testified that she had never made a threat to her family and that she "never inflicted any fear on any of [her] family ever."

¶11 The circuit court found that Catherine suffered from schizoaffective disorder, and that her mental illness was treatable. As to dangerousness, the court stated that Catherine demonstrates both "a substantial probability of physical harm to other individuals" and a "substantial probability of physical impairment or injury to herself or other individuals due to impaired judgment." The court did compliment Catherine for having maintained employment and for "deal[ing] very

well with the general public." Importantly, the court found Catherine not to be a credible witness with regard to her testimony that she would continue to take any medications or undergo voluntary treatment if the commitment order were withdrawn. The court found Catherine to be "in denial" and "fixated with" the judge whom she had previously threatened.

¶12    The circuit court extended Catherine's commitment order for a one-year period and entered an involuntary medication and treatment order for the period of her commitment. Catherine now appeals both orders.

## DISCUSSION

¶13    To recommit an individual under WIS. STAT. ch. 51, a petitioner must prove that the individual is mentally ill; the individual is a proper subject for treatment; and the individual is dangerous. WIS. STAT. § 51.20(1)(a)1.-2. In a recommitment hearing, a petitioner must prove dangerousness under one or more of five separate dangerousness standards in § 51.20(1)(a)2.a.-e. A recommitment requires a showing of "current dangerousness," and an alternative evidentiary path in the statute allows for a petitioner to prove current dangerousness by demonstrating that there is "a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn." Sec. 51.20(1)(am); *Waupaca County v. K.E.K.*, 2021 WI 9, ¶3, 395 Wis. 2d 460, 954 N.W.2d 366.

¶14    Here, Catherine challenges the circuit court's competency to hold the recommitment hearing. Catherine also asserts that the County's solicitation— and the court's admission of—supposed hearsay evidence with regard to her alleged dangerousness constituted a plain error.

**I. Circuit court's competency to proceed with the recommitment hearing**

¶15    "Whether a circuit court has lost competency is a question of law that we review independently." *Village of Trempealeau v. Mikrut*, 2004 WI 79, ¶7, 273 Wis. 2d 76, 681 N.W.2d 190.  A circuit court generally loses competency to enter an involuntary commitment order if the final hearing is not held within the statutory time limits.  *See State ex rel. Lockman v. Gerhardstein*, 107 Wis. 2d 325, 328-39, 320 N.W.2d 27 (Ct. App. 1982); *see also Jefferson County v. S.M.S.*, No. 2020AP814, unpublished slip op. ¶12 (WI App Mar. 11, 2021).[3]  When the delay "is caused solely by the conduct and manipulation of the detained subject," however, a reasonable extension of a deadline is allowed.  *County of Milwaukee v. Edward S.*, 2001 WI App 169, ¶9, 247 Wis. 2d 87, 633 N.W.2d 241.  If a recommitment order is entered after a court has lost competency, that order must be vacated.  *G.O.T. v. Rock County*, 151 Wis. 2d 629, 636, 445 N.W.2d 697 (Ct. App. 1989).

¶16    Catherine argues that the circuit court impermissibly delayed the recommitment hearing.  She submits that there are only four scenarios where a delay in holding the hearing is statutorily authorized.  First, and relevant here, WIS. STAT. § 51.20(10)(e) allows the final hearing to be postponed "[a]t the request of the subject individual or his or her counsel," but the postponement may not "exceed 7 calendar days from the date established by the court under this subsection for the final hearing."  Second, the subject individual can "waive the time period[]" for the final hearing "for a period not to exceed 90 days from the

---

[3] Unpublished opinions authored by a single judge and issued on or after July 1, 2009, may be cited for their persuasive value. *See* WIS. STAT. RULE 809.23(3)(b).

date of the waiver, if the individual and the [petitioner's] counsel … agree … that the individual shall obtain treatment under a settlement agreement." Sec. 51.20(8)(bg). Third, if an individual is not detained and "fails to appear for the final hearing[,] the court may issue an order for the subject individual's detention and shall hold the final commitment hearing within 7 days from the time of detention." Sec. 51.20(10)(d). Lastly, delay is permitted when an individual demands a jury trial, but the final hearing must be within fourteen days of filing the jury demand. *See* § 51.20(11)(a).

¶17    Citing ***G.O.T.***, Catherine argues that because the circuit court lost competency, the recommitment order should be reversed. We agree that the court lost competency when it permitted a fifty-seven-day delay in holding the final hearing. While extensions in certain circumstances are statutorily allowed and WIS. STAT. § 51.20(10)(e) allows for an extension simply at the request of the committed individual, the court is not statutorily permitted to delay the final hearing for fifty-seven days, as it did in this case. In addition to the fact that fifty-seven days well exceeds the mandatory seven-day limit in § 51.20(10)(e), the record does not support the grant of such a lengthy extension. Neither party on appeal has demonstrated why Catherine's request for an independent evaluation could not have been completed either within the statutory deadline or soon thereafter.[4]

---

[4] Although we ultimately apply judicial estoppel so as to preclude Catherine from taking advantage of her request for a longer delay in order to obtain an independent evaluation, we encourage circuit courts to be cognizant that regardless of the committed individual's requests, extensions must be short in duration and comply with statutory deadlines.

¶18    Despite the loss of competency, we conclude that Catherine is judicially estopped from asserting that claim.  The County argues that Catherine's recommitment hearing was delayed "solely by her action to seek an independent evaluation days before the hearing was originally scheduled to occur."  The County further contends that this situation is similar to **Edward S.**, in which the committed individual fired his attorney the day before the scheduled hearing, thereby necessitating a delay beyond the applicable statutory deadline.  **Edward S.**, 247 Wis. 2d 87, ¶7.  In **Edward S.**, we focused our analysis on the fact that the delay was a product of a unilateral action by the subject individual and not an action by the petitioner.  **Id.**  In addition, the delay benefited only the subject individual.  **Id.**, ¶7.  As a result, we refused to enforce the statutory deadline, explaining:

> "It is contrary to fundamental principles of justice and orderly procedure to permit a party to assume a certain position in the course of litigation which may be advantageous, and then after the court maintains that position, argue on appeal that the action was error."  In this case, Edward S. indicated a desire to obtain new counsel by firing his attorney and then stipulating to an adjournment.  On appeal, he argues that the adjournment was an error because it led to an untimely final hearing.

**Id.**, ¶11 (quoting **State v. Gove**, 148 Wis. 2d 936, 944, 437 N.W.2d 218 (1989)).

¶19    Here, the County argues—and we agree—that the same outcome should obtain.  While it is true that the County also stipulated to the extension, the extension was only prompted by a demand from Catherine and was for her benefit

alone.[5]  The County further argues, again citing to **Edward S.**, that Catherine should not benefit on appeal from the fact the extension happened after persuading the circuit court and the County to consent to the extension.  Specifically, the County states that the three elements of judicial estoppel are present in this case. We agree.

¶20  Judicial estoppel applies if: (1) a litigant's later position is clearly inconsistent with the litigant's earlier position; (2) the facts at issue are the same in both cases; and (3) the party to be estopped convinced the first court to adopt its position.  **State v. Petty**, 201 Wis. 2d 337, 348, 548 N.W.2d 817 (1996).  "[It] is the prerogative of the … court to invoke judicial estoppel at its discretion."  **Id.** at 346-47 (citation omitted).

¶21  For obvious reasons, all three elements are met in this case.  Quite simply, Catherine persuaded the circuit court to extend her commitment to permit her to possibly improve her defense—namely, by obtaining an independent evaluation, which is similar to the committed individual's request for new counsel in **Edward S.**  Now, on appeal, Catherine is taking an inconsistent position, arguing that the court lost competency by agreeing to her request for an extension, which requires us to vacate the court's recommitment order.  Catherine's assertions that her request for an extension was neither "needed," manipulative per se, nor unilateral (insomuch as the County stipulated to the requested

---

[5] We note that if the circuit court or the County had unilaterally moved for such an extension, given the high liberty interest at stake, the analysis would be different. *See* **Portage County v. J.W.K.**, 2019 WI 54, ¶16, 386 Wis. 2d 672, 927 N.W.2d 509 ("[C]ommitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." (alteration in original; citation omitted)).

extension) do not convince us that principles of judicial estoppel should not apply.[6]

¶22    Catherine contends there is no evidence demonstrating that she actually manipulated or played "fast and loose" with the circuit court. True, cases such as *Petty* have used these terms at times when speaking of judicial estoppel under their facts. *See Petty*, 201 Wis. 2d at 347. But, the core purpose of judicial estoppel is to protect the judiciary, as an institution, from the perversion of judicial machinery. *See id.* at 346. As such, the doctrine is intended "to protect against a litigant playing 'fast and loose with the courts' by asserting inconsistent positions." *Id.* at 347 (citations omitted). Whether intended or not, the net result in this case is that Catherine played "fast and loose" with the circuit court by asserting inconsistent positions.

¶23    In addition, Catherine did not simply request *an* extension. Rather, Catherine asked the circuit court to delay the recommitment hearing for "30-45 days," which itself is a relatively long time. Indeed, she expressly agreed "to waive all applicable time limits for holding the hearing to allow for an evaluation." Then, Catherine stipulated to extend the commitment for sixty days, after which the court set a hearing date fifty-seven days past the original recommitment

---

[6] Catherine also argues that judicial estoppel cannot apply here because the law requires both inconsistent positions to be "lawful" in order for estoppel to apply. And, because the seven-calendar-day statutory deadline by which to extend the time for the hearing is strict, such that any further extension is unlawful, she reasons that estoppel cannot apply here. We disagree with this argument for at least two reasons. First, as Catherine concedes, there is no support for application of the "both positions must be lawful" rule in these types of WIS. STAT. ch. 51 proceedings, and the authority she cites is inapt. Second, her argument is inconsistent with the holding in *Edward S.*, as that case also dealt with a strict statutory deadline, and in the same context of ch. 51 proceedings. *See County of Milwaukee v. Edward S.*, 2001 WI App 169, ¶9, 247 Wis. 2d 87, 633 N.W.2d 241.

deadline. If Catherine had not requested such an extension, especially one at such length, the final hearing would not have been delayed to this degree.

¶24 In all, Catherine proposed extending the time limit for a lengthy period of time, stipulated to a sixty-day extension, and then asked the circuit court to approve that extension. Under these circumstances, we conclude Catherine is judicially estopped from arguing, on appeal, that the delay in holding her recommitment hearing resulted in the court's loss of competency.

## II. Plain error to admit hearsay evidence

¶25 Some rights—including the ability to object to errors committed by a circuit court—can be forfeited when they are not preserved at the circuit court level, and "a mere failure to object constitutes a forfeiture of the right on appellate review." *State v. Ndina*, 2009 WI 21, ¶30, 315 Wis. 2d 653, 761 N.W.2d 612.[7] This forfeiture rule "gives both parties and the circuit court notice of the issue and a fair opportunity to address the objection." *Id.* Additionally, "[i]ssues that are not preserved at the circuit court [level] … generally will not be considered on appeal." *Mikrut*, 273 Wis. 2d 76, ¶15.

¶26 Here, Catherine acknowledges that she made no contemporaneous objection during the recommitment hearing to the introduction of any allegedly inadmissible hearsay evidence. Catherine instead argues that the County's solicitation of "layers" of inadmissible hearsay regarding underlying facts derived

---

[7] Some cases use the words "forfeiture" and "waiver" interchangeably, but these two words are distinct legal concepts. *See State v. Ndina*, 2009 WI 21, ¶29, 315 Wis. 2d 653, 761 N.W.2d 612. Forfeiture is the failure to make the timely assertion of a right, while waiver is the intentional abandonment of a known right. *Id.*

from her treatment record was plain error. In particular, she alleges that the witnesses did not have personal knowledge of the facts about which they testified at the hearing. She claims, instead, that these witnesses were referencing information from past witnesses and even those prior individuals did not have personal knowledge of the alleged facts when they testified. Catherine alleges that ten different statements elicited by the County suffered from these hearsay issues.

¶27 The plain error doctrine allows an appellate court "to review errors that were otherwise [forfeited] by a party's failure to object." *See* **State v. Jorgensen**, 2008 WI 60, ¶21, 310 Wis. 2d 138, 754 N.W.2d 77. "Plain error is 'error so fundamental that a new trial or other relief must be granted even though the action was not objected to at the time.'" **Id.** (citation omitted). "The error, however, must be 'obvious and substantial,' and courts should use the plain error doctrine sparingly." **State v. Nelson**, 2021 WI App 2, ¶46, 395 Wis. 2d 585, 954 N.W.2d 11 (2020), *review denied*, 2022 WI 84 (citation omitted). Whether plain error has occurred "is a question of law we review de novo." **State v. Bell**, 2018 WI 28, ¶8, 380 Wis. 2d 616, 909 N.W.2d 750. "[A] court should exercise its discretionary authority under the plain error doctrine only when such errors 'seriously affect the fairness, integrity or public reputation of judicial proceedings.'" **State v. King**, 205 Wis. 2d 81, 96, 555 N.W.2d 189 (Ct. App. 1996) (citation omitted).

¶28 Catherine has not established that application of the plain error doctrine is warranted here. First, we are mindful of WIS. STAT. § 51.20(1)(am), which expressly provides that when, as here, the petitioner is arguing that the individual would be a proper subject for commitment if treatment were withdrawn, dangerousness can be analyzed "based on the subject individual's treatment record." *See* § 51.20(1)(am). This approach by the legislature is consistent with

our judicial understanding that while each commitment extension order must stand on its own merits, "a recommitment hearing is not 'an entirely new proceeding,'" and "'the circuit court continues to receive evidence in the same case' and may rely on 'the individual's present condition and past response to treatment.'" ***Portage County v. J.W.K.***, 2019 WI 54, ¶26, 386 Wis. 2d 672, 927 N.W.2d 509 (citation omitted). Accordingly, in the context of the hearing at issue, all parties and the circuit court were operating with the understanding that, generally speaking, the court would be considering information in Catherine's prior treatment records and prior history. We mention this context not to conclude that any of the unobjected-to, alleged hearsay statements should have been admissible had an objection been lodged, but only to note that any purported error was neither obvious nor substantial.[8]

¶29     Furthermore, Catherine does not allege that the admission of the hearsay evidence regarding her treatment records deprived her of any constitutional or substantial right. *See* WIS. STAT. § 901.03(4) (notice of plain errors affecting substantial rights is allowed regardless of whether an objection occurred). At best, she implies that it inhibited her ability to prepare for and advance her case. She also has not cited any case law applying the plain error doctrine to hearsay statements not objected to at trial, either generally or specifically with respect to WIS. STAT. ch. 51 recommitment proceedings.

¶30     Ultimately, even if there were some error in admitting the purported hearsay evidence, Catherine has failed to show how the admission of any of this

---

[8] While Catherine replies to this argument by noting, correctly, that individual extension orders "must stand on their own merits," that fact says nothing about the reality of how and why a committed individual's prior treatment records are properly considered by a circuit court in recommitment proceedings relying on WIS. STAT. § 51.20(1)(am).

evidence was an error that was "fundamental" or "obvious and substantial." *See Jorgensen*, 310 Wis. 2d 138, ¶21; *see also Nelson*, 395 Wis. 2d 585, ¶46. As noted earlier, the context of the proceedings suggested that Catherine's prior treatment records and case history—including underlying facts noted therein— were going to be considered by the circuit court in making its decision on Catherine's recommitment. In addition, most, if not all, of the unobjected-to alleged hearsay statements were simply related to the history of Catherine's WIS. STAT. ch. 51 proceedings and facts that had been properly reported on, or testified to, by witnesses at the prior hearings, including the examining doctors. Furthermore, we are not convinced that the alleged hearsay statements altered the court's analysis in any way. Rather, the court properly based its conclusion to extend commitment on Dr. Bales' testimony and his personal knowledge as Catherine's treating physician, as well as on Dr. Black's properly admitted report.

¶31 For the foregoing reasons, assuming without deciding that errors occurred regarding the admission of the unobjected-to hearsay statements, we conclude that those errors were not so fundamental or obvious and substantial, either individually or collectively, to warrant application of the plain error doctrine. Therefore, we decline to apply the plain error doctrine in the manner that Catherine seeks.[9] *See King*, 205 Wis. 2d at 96.

---

[9] Alternatively, the County argues that "[i]f a fundamental, substantial, and obvious error exists" in admitting the allegedly inadmissible hearsay, the error was harmless. Because we decline to apply the plain error doctrine, we need not reach this argument. *See Turner v. Taylor*, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (when one issue supports a judgment an appellate court is not required to address all the issues raised by the parties).

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.