COURT OF APPEALS
DECISION
DATED AND FILED

August 8, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1096**

Cir. Ct. No. 2020PR437

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

IN RE THE ESTATE OF GEORGE J. CEMBROWSKI:

SUSAN A. KRUEGER, PERSONAL REPRESENTATIVE OF THE ESTATE OF GEORGE J. CEMBROWSKI,

RESPONDENT,

V.

GARY CEMBROWSKI,

APPELLANT.

APPEAL from an order of the circuit court for Milwaukee County: PAUL R. VAN GRUNSVEN, Judge. *Affirmed*.

Before White, C.J., Donald, P.J., and Dugan, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Gary Cembrowski appeals an order of the circuit court granting summary judgment in favor of his sister, Susan A. Krueger, and dismissing his objections to the probate of their father's will and his claim against their father's estate. On appeal, Gary argues that the circuit court improperly construed Susan's motion to dismiss as a motion for summary judgment and improperly assessed the credibility of his affidavit in granting summary judgment for Susan. Gary also argues that the circuit court erroneously dismissed his claim against the estate for being untimely. Upon review, we affirm the circuit court's order.

## BACKGROUND

¶2 George Cembrowski died on March 2, 2020. He was survived by his four children—Susan Krueger, Wendy Cembrowski, Gary Cembrowski, and Dennis Cembrowski.

¶3 Susan applied for an informal administration of the estate on March 26, 2020, and submitted a will dated August 28, 2015. The 2015 will named Susan as George's personal representative, and it named Wendy as the alternate. The 2015 will also placed George's estate into a trust, and the trust provides that the estate is to be shared equally among George's four children.[1]

---

[1] The parties noted that the trust documents are not a part of the record. However, no one disputes that the trust was structured to provide equal shares of George's estate to his four children.

¶4 On July 14, 2020, Gary and Dennis filed a demand for formal proceedings and objections to the probate of the 2015 will and Susan's appointment as the personal representative. In their objections, Gary and Dennis primarily argued that the 2015 will was the product of Susan's undue influence over their deceased father; however, they also argued that their father lacked competency to execute the 2015 will. As an alternative, they submitted a will dated October 22, 2004, which they argued controlled. The 2004 will named George's now deceased wife, Elizabeth Cembrowski, as the personal representative and named Wendy as the alternate. Under the 2004 will, George's estate was also left to Elizabeth. As particularly relevant here, though, the 2004 will left George and Elizabeth's home to Gary, should Elizabeth predecease George. The residue of the estate was then to be divided equally among the four children.

¶5 In addition to their objections, Gary and Dennis filed a claim against the estate on August 24, 2020, for $200,000 as compensation for "personal care and support." Instead of providing documentation supporting their claim at the time of filing, they provided that "[t]he amount claimed is subject to further verification."

¶6 Susan filed an objection to the claim on September 4, 2020, citing Gary and Dennis's lack of documentary support for their claim of $200,000 for personal care and support. Three months later, on December 8, 2020, she filed a motion to dismiss the objections and the claim, after Gary and Dennis still failed to provide support for their claim. Attached to her motion were two supporting affidavits—one from her and one from the attorney who assisted with preparing the 2015 will—discovery responses from Gary and Dennis, and communications between counsel about deficiencies in the discovery responses.

¶7 In her motion, Susan argued that Gary was attempting to void the 2015 will in order to obtain the Cembrowski home where he had been residing with his parents rent-free and, if that did not work, he filed a claim in excess of the value of the estate in order to drain the estate. She further stated that Gary and Dennis failed to produce any supporting documentation for their objections and their claim in response to interrogatories Susan served on them, and she described that Gary and Dennis provided deficient discovery responses when they inappropriately continued to maintain that documentation was forthcoming. She further argued that Gary and Dennis failed to provide any detail or examples of the personal care and support they provided, or of the reasons they believed the Cembrowski home was to be left to Gary. Susan argued, "They should have had evidence to support their allegations and claims before making those claims in court documents." Because they had yet to produce any support, either in their court filings or through discovery, Susan came to the conclusion that Gary and Dennis made claims in court without any legal or factual basis. She, thus, requested that their objections and their claim be dismissed.

¶8 In response, Gary and Dennis filed a "Brief in Opposition of Summary Judgment," within which they outlined the standard for summary judgment. Gary continued by stating that he lived with his parents "throughout his adult life" and "served as a primary caretaker," and he argued that he "raised triable issues of fact" as to whether Susan took advantage of their father's age and poor health—which included hallucinations, hearing impairment, poor eyesight, and dementia—when she arranged to have him redo his will in 2015 and exclude Gary from inheriting the house. He argued that, based on his submission, "summary judgment should be denied at this time." The response included two

supporting affidavits—one from Gary and one from Dennis—but it did not include any additional exhibits.

¶9     Susan argued in reply that Gary and Dennis continued to lack support for their claims of undue influence and their claims should be dismissed. In fact, Susan argued that Gary and Dennis misrepresented the facts. She alleged that Gary was abusive towards their parents, and she further alleged that their father was perfectly competent at the time he executed the 2015 will, as evidenced by his work as a crossing guard and the vacations he took around the time of the 2015 will. She further contended that Gary and Dennis mischaracterized George's medical records because they picked out one reference to dementia in 292 pages worth of medical records. She also maintained that George testified in, and was clearly competent during, the proceedings to appoint a guardian for their mother, and those proceedings occurred in the month prior to George executing the 2015 will.

¶10     In a written decision, the circuit court granted summary judgment for Susan and dismissed the objections and the claim that Gary and Dennis filed. The court noted that the parties had "differing characterizations of the instant motion" but "it is readily apparent that the parties rely on the summary judgment standard because they ask the [c]ourt to take their affidavits into consideration." The circuit court, therefore, treated the matter as one for summary judgment.

¶11     In its decision, the circuit court dismissed the claim against the estate for two reasons: (1) the claim was filed late and (2) Gary failed to produce evidence of an express agreement for personal services. The circuit court also dismissed the objections to the 2015 will and Susan's appointment as special administrator because Gary failed to provide any credible evidence crucial to

supporting his claim of undue influence. In particular, the circuit court found that Gary failed to provide any information suggesting that Susan had an opportunity to unduly influence George, and in fact, the circuit court found that Gary admits that "no one had more access to his father than he did." The circuit court similarly found that Gary failed to provide any information that George was susceptible to influence, that Susan had a disposition to influence George, or that Susan engaged in any wrong or unfair conduct "when she stands to receive no more than her siblings."

¶12 In conclusion, the circuit court granted Susan's motion and stated, "In this instance, the [c]ourt finds Gary's affidavits lack credibility in light of the wealth of evidence against him, including the information presented to show George's competency in 2015 and the allegations that George endured Gary's verbal and physical abuse during the final years of his life."

¶13 Gary now appeals.

## DISCUSSION

¶14 Gary raises three main arguments on appeal. In his first argument, he contends that the circuit court improperly treated Susan's motion to dismiss as a motion for summary judgment. In his second argument, he alleges that the circuit court improperly considered the credibility of his affidavit as part of the summary judgment procedure. In his third argument, Gary contends that the circuit court erroneously denied his claim as untimely filed. However, as a result of our conclusion today, we need not address Gary's third argument, and we turn to Gary's first two arguments. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground[.]").

6

### I.   Whether the Circuit Court Properly Treated Susan's Motion as One for Summary Judgment

¶15   In response to Gary's first argument, we initially note that Gary concedes in his reply brief that he not only failed to object below to the circuit court's treatment of Susan's motion to dismiss, but also he himself treated Susan's motion to dismiss as one for summary judgment.  A review of the record confirms Gary's concession, and it shows that Gary responded to Susan's motion by filing a brief entitled, "Brief in Opposition of Summary Judgment" wherein he proceeded to argue that he raised "triable issues of fact."  Gary also submitted two affidavits with the response.

¶16   Accordingly, Gary correctly observes that he cannot now complain of the circuit court's treatment of Susan's motion as one for summary judgment. *See State v. Gove*, 148 Wis. 2d 936, 943-44, 437 N.W.2d 218 (1989) (rejecting a claim raised on appeal when the litigant "affirmatively contributed to what he now claims was trial court error"); *see also State v. Freymiller*, 2007 WI App 6, ¶15, 298 Wis. 2d 333, 727 N.W.2d 334 ("Generally, where a party 'invites error' on a given issue, we will not review the issue on appeal.").  As the circuit court recognized in its decision, the parties presented "differing characterizations of the instant motion" but that "it is readily apparent that the parties rely on the summary judgment standard."  Consequently, we do not address Gary's argument on this topic further, and we also treat the matter as one for summary judgment.[2]

---

[2] As a result of Gary's concession, we also do not address Susan's alternative argument that the circuit court properly converted the motion into one for summary judgment. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989).

**II.    Whether the Circuit Court Improperly Weighed Witness Credibility**

¶17    Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2) (2021-22).[3] "Whether the circuit court properly granted summary judgment is a question of law that this court reviews de novo." *Racine Cnty. v. Oracular Milwaukee, Inc.*, 2010 WI 25, ¶24, 323 Wis. 2d 682, 781 N.W.2d 88 (citation omitted).

¶18    Gary argues that the circuit court improperly considered the credibility of the affidavits in reviewing the motion for summary judgment. In making this argument, Gary points to a statement made by the circuit court in its decision where the circuit court stated, "Finally, it is the [c]ourt's duty and obligation to weigh the credibility of the evidence presented. In this instance, the [c]ourt finds Gary's affidavits lack credibility in light of the wealth of evidence against him."

¶19    In general, "[t]he trial court may not base its ruling on its assessment of the weight of the evidence or the witnesses' credibility[.]" *Pomplun v. Rockwell Int'l Corp.*, 203 Wis. 2d 303, 306-07, 552 N.W.2d 632 (Ct. App. 1996). However, while Gary is correct that assessing witness credibility is generally inappropriate upon summary judgment, we conclude that Gary ultimately failed to raise any triable issues of fact because he provides only conclusory allegations in

---

[3] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

response to Susan's motion as opposed to admissible facts. *See **Oracular Milwaukee, Inc.**,* 323 Wis. 2d 682, ¶26 (quoting WIS. STAT. § 802.08(3)). Thus, we turn to an analysis of Gary's submission opposing Susan's motion.

¶20    In Gary's affidavit attached to the "Brief in Opposition of Summary Judgment," he averred that he held various jobs throughout the years, including installing electronics and running his own small business. He avers that he "significantly reduced" his business operations after his parents' health began to decline in 2010, and that his father's health continued to decline to the point where his father developed glaucoma, a cataract, and would hallucinate. He further stated that his father was "hard of hearing" and "would often misunderstand spoken words." He provided that he became "a full time caretaker" in 2014, and he witnessed strange behavior from his father, including incidents of dumpster diving to "salvage rotten meat which he would attempt to eat and attempt to feed mom." He further averred that Susan took their father to arrange a guardianship over their mother and Susan told him that the attorney advised that their father would not be appointed as the guardian. Thus, Susan sought to be appointed the guardian over their mother, but "Supportive Community Services" was appointed. Finally, Gary averred that Susan incorrectly stated under oath that their mother and father took care of themselves, and that he believed that there were "significant medical records presently within the possession of Froedtert Hospital and Ascension Medical Group."

¶21    Ultimately, Gary provides only conclusory allegations and does not provide facts admissible in evidence that would prove any of the elements of his objections or claim. Affidavits in support of and in opposition to a motion for summary judgment "shall be made on personal knowledge and shall set forth such evidentiary facts as would be admissible in evidence." WIS. STAT. § 802.08(3).

"The party opposing summary judgment 'may not rest upon the mere allegations or denials of the pleadings' but instead, through affidavits or otherwise, 'must set forth specific facts showing that there is a genuine issue for trial.'" *Oracular Milwaukee, Inc.*, 323 Wis. 2d 682, ¶26 (quoting WIS. STAT. § 802.08(3)). However, a review of Gary's affidavit demonstrates that he has failed to carry his burden and continues to rest upon mere allegations that the 2015 will was the product of undue influence and that George lacked the capacity to execute the 2015 will.

¶22 To defeat Susan's motion, Gary needed to set forth specific facts showing a genuine issue for trial related to four elements related to the execution of the 2015 will: (1) George was susceptible to undue influence, (2) Susan had the opportunity to unduly influence George, (3) Susan had the disposition to unduly influence George, and (4) a coveted result. *See Brehmer v. Demien*, 41 Wis. 2d 349, 351, 164 N.W.2d 318 (1969); *see also Lee v. Kamesar*, 81 Wis. 2d 151, 158-59, 259 N.W.2d 733 (1977).

¶23 By contrast, Gary's affidavit completely fails to assert any facts related to the execution of the 2015 will. He fails to assert how his father lacked competency and how the 2015 will was the result of undue influence, including necessary components such as that Susan somehow arranged the execution of the 2015 will or was present at the time that George executed the 2015 will.[4] *See Brehmer*, 41 Wis. 2d at 357 ("Undue influence to render a will invalid must

---

[4] Dennis's supporting affidavit is equally deficient. In his affidavit, he avers that he noticed that their father was becoming "more and more confused" and that "[h]e would say things that were nonsensical while talking to himself." However, Dennis's only statement regarding the 2015 will amounts to a statement that "I don't believe that he could have understood the Will he signed on August 28, 2015."

operate at the particular time of its execution." (citation omitted)). Rather than provide facts related to the 2015 will, Gary instead asserts irrelevant facts in his affidavit related to Susan's assistance to their father in the guardianship proceedings involving their mother. The guardianship proceedings admittedly occurred in 2014 and 2015 around the same time as the execution of 2015, but facts related to the guardianship proceedings nevertheless fail to provide any details about the execution of the 2015 will and how it was the product of undue influence.

¶24 Gary's affidavit falls short in other respects. For example, Gary also provides details suggesting that his father was aging, but he fails to indicate how those details necessitate that his father lacked competency or was somehow susceptible to undue influence. *See **Lee***, 81 Wis. 2d at 159 ("[T]he infirmities of old age, such as forgetfulness do not incapacitate one from making a valid will."). Moreover, as the circuit court stressed, the facts in Gary's affidavit even contradict certain points Gary makes in his argument. More specifically, instead of establishing that Susan had the opportunity to influence their father, Gary's affidavit alternatively establishes "that no one had more access to his father than he did" because he lived with and cared for his parents beginning in 2010. *See **Brehmer***, 41 Wis. 2d at 356 ("almost daily contact with the deceased" provided "the opportunity to unduly influence her father"). Thus, we conclude that Gary has failed to set forth specific facts demonstrating a genuine issue for trial as related to the objections to the probate of the 2015 will.

¶25 As to the claim against the estate, his affidavit fails to establish that Gary provided any care to his father as part of a contract for personal services for which George intended to compensate Gary. *See **Johnson v. Buehler***, 81 Wis. 2d 55, 59, 259 N.W.2d 714 (1977) (requiring "an express agreement" for

compensation). In fact, Gary fails to include any information in his affidavit that his father even intended to leave the Cembrowski home to Gary, much less that George intended to leave the Cembrowski home to Gary as compensation for providing care. Furthermore, as the circuit court pointed out, Gary's statement in this regard is illogical because "Gary argues George's 2004 will bequeathing his house to him was a reflection of the care he provided to his parents, but his affidavit states his parents did not require assistance until 2010."[5]

¶26 Given the shortcomings of Gary's response to Susan's motion, he has done nothing more than rest on the mere allegations of the original objections and claim, which themselves lacked any supporting documentation. Consequently, we conclude that there was no genuine issue of fact left for trial as a result of Gary's failure to carry his burden, and we conclude that the circuit court properly granted summary judgment in favor of Susan and dismissed the objections and claim against their father's estate.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[5] Dennis's affidavit is similarly unhelpful, and in his affidavit, he merely states, "I believe that my brother Gary should receive the house because he was the primary caretaker of my parents."